IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RITA ELLIS,<br>　　　　Plaintiff, | CIVIL ACTION |
| v. | |
| GENESIS HEALTHCARE<br>CORPORATION AND KELLY<br>GRIMALDI,<br>　　　　Defendants. | NO. 18-5536 |

## MEMORANDUM OPINION

Plaintiff Rita Ellis brings suit against Defendants Genesis Healthcare Corporation, Genesis Healthcare, Inc., and Kelly Grimaldi (collectively "Defendants"), alleging Defendants' termination of Plaintiff's employment was racially motivated in violation of 42 U.S.C § 1981 and constituted common law defamation, injurious falsehood, and intentional infliction of emotional distress. Defendants now move to dismiss Plaintiff's common law claims.

For the reasons that follow, Defendants' partial motion to dismiss will be granted in part and denied in part.

### I.  Background

Plaintiff is an African-American woman who worked as an Assistant Administrator at the Fairview Care Center ("Fairview"), a medical facility operated by Defendants Genesis Healthcare Corporation and Genesis Healthcare, Inc. (collectively "Genesis"). Defendant Grimaldi—a white woman to whom Plaintiff reported—was employed by Genesis as the Administrator of Fairview.

In May of 2018, Genesis told Fairview employees that Genesis had sold the facility to new owners, effective August 1, 2018. Genesis also informed employees that, due to the sale, unused sick leave would expire on August 1, 2018. In the lead up to the August 1 transfer,

employees sought to use sick leave days to cover absences, even if not ill. Grimaldi and Fairview's Human Resource Manager, Richard Bailey, authorized the facility's scheduler, Terri Webb, to approve such requests.

Plaintiff was absent from work from July 3 to July 10. On July 17, in line with Bailey and Grimaldi's policy of approving such requests, Plaintiff requested to use sick leave days to cover the absence. Grimaldi verbally approved Plaintiff's use of leave. However, the payroll system would not allow Plaintiff to enter the leave on her time card, so Plaintiff asked another Genesis employee—Charmaine Cobette—to make the change, which Cobette did. On July 17, Grimaldi reviewed and then approved the facility's payroll, including Plaintiff's changed time card.

On July 23, Grimaldi informed Plaintiff that Genesis was investigating whether Plaintiff had falsified her time card and suspended her pending the conclusion of the investigation. On July 29, Genesis provided Plaintiff an Individual Performance Improvement Plan ("IPIP"), which stated that Plaintiff had violated Genesis' disciplinary code, and terminated her employment. Plaintiff claims Genesis did not terminate white workers, including Grimaldi, who had also used sick leave to cover absences from work retroactively.

At some point after Plaintiff's termination, Defendants informed the Pennsylvania Department of Labor and Industry's Bureau of Unemployment Compensation (the "Bureau") that Plaintiff was terminated for falsifying her time card. Defendants also placed documents to that effect—including the IPIP—in Plaintiff's personnel file.

II. **Legal Standard**

To overcome a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In determining whether a complaint satisfies this standard, a court must first outline the required elements, then strip away legal conclusions from the complaint, and finally decide whether the well-pled factual allegations plausibly entitle the plaintiff to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

Where, as here, a federal court is interpreting Pennsylvania law, the federal court must follow the Pennsylvania Supreme Court. *In re Energy Future Holdings Corp.*, 842 F.3d 247, 253-54 (3d Cir. 2016). If the law is unclear and there is no controlling precedent issued by Pennsylvania's highest court, a federal court must "predict" how it would rule, giving "due regard, but not conclusive effect, to the decisional law of lower state courts." *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000).

### III. Discussion

#### A. Defamation

Plaintiff alleges that Defendants defamed her: (1) by informing the Bureau that Plaintiff had been fired for falsifying her time card; and, separately, (2) by placing documents, including the IPIP, regarding her termination in Plaintiff's personnel file. To make out a claim for defamation, Plaintiff must establish: (1) the defamatory character of the communication; (2) the communication's publication by Defendants; (3) the communication's application to Plaintiff; (4) the understanding by the recipient of the communication's defamatory meaning; (5) the understanding by the recipient of the communication's application to Plaintiff; (6) special harm resulting to Plaintiff from publication; and, where relevant, (7) abuse of a conditional privilege.

3

*Kelley v. Pittman*, 150 A.3d 59, 67 (Pa. Super. 2016); *see* 42 Pa. C.S.A. § 8343(a) (laying out a plaintiff's burden).

Defendants argue that Plaintiff's claim is not actionable because the purportedly defamatory communications were covered by absolute privileges. Specifically, Defendants argue that the judicial privilege covers the communication to the Bureau, and that an employer privilege covers documents placed in Plaintiff's personnel file. Defendants bears the burden of establishing the privileged character of the communications. 42 Pa. C.S.A. § 8343(b).

As to the communication to the Bureau, Defendants have not established that the judicial privilege applies because "[f]rom the Complaint . . . the Court cannot determine if the communications of which [Plaintiff] complains" was made "during and pertinent to judicial or quasi-judicial proceedings." *Blocker v. Cmty. Educ. Centers, Inc.*, 2014 WL 1348959, at *8 (E.D. Pa. Apr. 7, 2014). The Complaint alleges only that Defendants published information to the Bureau regarding Plaintiff's termination, without any indication that the publication was in connection with a judicial or quasi-judicial proceeding. Thus, while the parties dispute whether the judicial privilege covers communications made in connection with unemployment compensation proceedings, *see Milliner v. Enck*, 709 A.2d 417, 419 (Pa. Super. 1998) (refraining from definitively deciding the question), the Court need not resolve that issue because the Complaint does not allege that Defendants informed the Bureau of Plaintiff's termination during the course of an unemployment compensation proceeding, *cf. Foster v. JLG Indus.*, 372 F. Supp.2d 792, 801 (M.D. Pa. 2005) (holding judicial privilege applied to former-employer's testimony to the Pennsylvania Unemployment Compensation Board of Review), or any other judicial proceeding. *Post v. Mendel*, 507 A.2d 351, 355 (Pa. 1986) (noting that the judicial privilege protects only "those communications which are issued in the regular course of judicial

proceedings"). Accordingly, Defendants' motion to dismiss Plaintiff's defamation claim as to the communication to the Bureau will be denied.

As for placing documents—including the IPIP—in Plaintiff's personnel file, Defendants have established that such action was absolutely privileged. "Based on the public policy favoring private resolution of disputes among employers, employees, and unions . . . Pennsylvania law extends to employers an absolute privilege to publish defamatory matter in notices of employee termination." *Agriss v. Roadway Exp., Inc.*, 483 A.2d 456, 464 (Pa. Super. 1984). The absolute privilege extends to "a warning letter" as well as a "copy [of a] warning letter sent to [an] employee['s] personnel file." *Id.* at 310-11. Here, the documents placed in Plaintiff's personnel file were Plaintiff's notice of termination or copies thereof. Accordingly, an absolute privilege protects Defendant's placement of those documents in Plaintiff's personnel file. Thus, Plaintiff cannot maintain a claim for defamation premised on such action.[1]

### B. Injurious Falsehood

Defendant also moves to dismiss Plaintiff's claim for injurious falsehood—sometimes also referred to as "commercial disparagement." *See Pro Golf Mfg., Inc. v. Tribune Rev. Newspaper Co.*, 809 A.2d 243, 247 (Pa. 2002) (noting the cause of action has been described in various terms). "An action for commercial disparagement is meant to compensate a vendor for pecuniary loss suffered because statements attacking the quality of his goods have reduced their marketability, while defamation is meant [to] protect an entity's interest in character and reputation." *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 924 (3d Cir. 1990); *see also Mallory v. S & S Publishers*, 168 F. Supp.3d 760, 774 (E.D. Pa. 2016) ("A claim

---

[1] Defendants also contend that placing the IPIP and other documents in Plaintiff's personnel file did not constitute "publication" of the communication. The Court need not resolve that issue here, however, because, as discussed above, such action was covered by an absolute privilege. Accordingly, Plaintiff may not maintain a claim for defamation based on the allegation that Defendants placed the IPIP and other documents in Plaintiff's personnel file.

5

for commercial disparagement protects economic interests related to the marketability of goods, whereas defamation involves the reputation of persons, not products.") (internal quotation marks omitted). Thus, to make out a claim for injurious falsehood (or commercial disparagement), Plaintiff must establish that (1) Defendants published a statement disparaging Plaintiff's goods or property; (2) the statement was false; (3) Defendants intended the publication to cause pecuniary loss or reasonably should have recognized that publication would result in pecuniary loss; (4) Plaintiff suffered pecuniary loss to her goods or property; and (5) Defendants acted with actual malice as to the falsity of the statement. *See Pro Golf Mfg.*, 809 A.2d at 246.

Plaintiff's injurious falsehood claim fails because the Complaint does not contain sufficient factual allegations from which the Court can conclude that Defendants published a statement disparaging Plaintiff's goods or property. Plaintiff's injurious falsehood claim is premised on the same allegations as her defamation claim—that Defendants published a false statement to the Bureau about Plaintiff falsifying her time card and placed documents to that effect in her personnel file. The allegedly disparaging statements, however, do not concern Plaintiff's goods or property; instead, Defendants' statements concern only Plaintiff's personal reputation. While Plaintiff may maintain a claim for defamation based on false communications that damage her reputation, those communications do not support a claim for injurious falsehood. *See Mallory*, 168 F. Supp.3d. at 775 (dismissing plaintiff's injurious falsehood claim because plaintiff "ha[d] not plausibly pled economic loss, but rather focuse[d] on damage to her reputation"). Thus, Defendants' motion to dismiss Plaintiff injurious falsehood claim will be granted.

### C. Intentional Infliction of Emotional Distress

Finally, Defendants move to dismiss Plaintiff's intentional infliction of emotional distress

("IIED") claim. To make out an IIED claim, Plaintiff must show that Defendants' conduct: (1) was intentional or reckless; (2) was extreme and outrageous; (3) caused distress to Plaintiff; and, (4) that distress was severe. *See Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988) (applying Pennsylvania law). Whether Defendants' conduct was so extreme as to permit recovery "is for the court to determine." *Id.* Defendants contend that the Complaint fails to allege conduct so extreme or outrageous as to permit recovery for an IIED claim.

Plaintiff alleges that her firing was racially discriminatory and, as such, constituted outrageous conduct. However, "[c]ourts applying Pennsylvania law have repeatedly found that allegations of race . . . discrimination, even when coupled with retaliatory conduct, do not meet the 'extreme and outrageous conduct' standard necessary to state a claim for IIED." *Bogle v. City of Philadelphia*, 2015 WL 4159443, at *5 (E.D. Pa. July 9, 2015). That is the case even where racial discrimination results in termination. *Hargraves v. City of Philadelphia*, 2007 WL 1276937, at *3 (E.D. Pa. Apr. 26, 2007) (collecting cases). Thus, because Plaintiff's IIED claim is premised on Defendants' racially discriminatory termination, and because allegations of racial discrimination are not, as a matter of law, sufficiently "extreme and outrageous" so as to support an IIED claim, Plaintiff's IIED claim fails to state claim upon which relief can be granted. Accordingly, Defendants' motion to dismiss Plaintiff's IIED claims will be granted.

An appropriate order follows.

BY THE COURT:

_____
**WENDY BEETLESTONE, J.**